IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY WOMACK,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

No. 08-cv-705-DRH
No. 05-cr-30015-DRH

**MEMORANDUM AND ORDER**

**HERNDON, Chief Judge:**

## I. Introduction and Background

Now before the Court is Anthony Womack's § 2255 petition (Doc. 1). The Government opposes the petition (Doc. 5). Based on the following, the Court **DENIES** Womack's petition.

On February 15, 2005, Womack was charged with conspiracy to possess with intent to distribute five or more kilograms of cocaine in **U.S. v. Womack, 05-CR-30015-DRH** (Doc. 12). On February 23, 2005, attorney John R. Abell was appointed to represent Womack at trial (**Womack**, Doc 46). On October 19, 2005, a federal grand jury returned a superseding indictment charging Womack with conspiracy to possess with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii) (**Womack**, Doc. 169). Womack's first trial began on March 13, 2006 but ended in a mistrial due to a hung jury (**Womack**, Docs. 274 & 286). The second trial began on April 3, 2006 (**Womack**, Doc. 301). On April 5, 2006, the jury found Womack guilty of Count 1 of the

Superseding Indictment (*Womack*, Docs. 306).  The Court sentenced Womack to 151 months' imprisonment, five years' supervised release, and was ordered to pay a fine of $1,000, and a special assessment of $100 (*Womack*, Doc. 462).

Womack filed a notice of appeal on December 6, 2006, seeking to challenge the sufficiency of the evidence, the denial of his motion for new trial, and sentencing errors (*Womack*, Doc. 469).  However, the Seventh Circuit affirmed Womack's conviction and sentence.  ***See United States v. Womack*, 496 F.3d 791 (7th Cir. 2007).**

Thereafter, Womack filed the instant § 2255 petition on October 3, 2008 (Doc. 1).  Womack raises four arguments in his petition, focusing on the ineffective assistance of his counsel.  Specifically, Womack argues that his counsel was ineffective in that he: (1) failed to seek a Batson hearing regarding jury composition, (2) failed to challenge an allegedly illegal search and seizure, (3) failed to present evidence regarding his relevant conduct, and (4) failed to seek a jury instruction regarding single and multiple conspiracies. On February 17, 2009, the Government filed a response to Womack's petition (Doc. 5).  To date, Womack has not filed a response.

## II.  Analysis

**A.    28 U.S.C. § 2255**

Womack petitions the Court for relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Section 2255 provides an extraordinary remedy reserved to correct a narrow subset of judicial error. Generally speaking, a § 2255 proceeding may not provide backdoor access for making the kind of garden variety arguments which could have - but were not - made on direct appeal. **See Arias v. United States, 484 F.2d 577, 579 (7th Cir. 1973) (error which would require reversal on direct appeal is not reviewable on § 2255 motion unless the error is constitutional or jurisdictional in character); Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992) ("nonconstitutional issues that could have been but were not raised on direct appeal" are not reviewable on § 2255 motion")**. Moreover, the Seventh Circuit has specifically held that errors in the determination of a sentence (without more) are not the proper subject matter for § 2255 review. **See Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996) ("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations…[it] is rarely if ever the proper vehicle by which to challenge the application of a Sentencing Guideline provision where the sentence has become final and the petitioner did not directly appeal the issue"); United States v. Wisch, 275 F3d 620, 625 (7th Cir. 2001) ("Allegations that the district judge misapplied the sentencing guidelines are reviewable**

**under § 2255.")**.  However, certain constitutional claims are allowed whether or not they were made on direct appeal:

> Although nonconstitutional issues cannot serve as an independent basis for section 2255 relief, the fact that the nonconstitutional issues were not raised on direct appeal can be used as evidence of ineffective assistance of counsel. Ineffective assistance of counsel, because it is a constitutional issue, can in turn serve as a valid basis for section 2255 relief.

*Belford*, **975 F.2d at 313, n.1.**

Additionally, an evidentiary hearing on a Section 2255 petition is unnecessary when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." **28 U.S.C. § 2255 (2006)**.  The Seventh Circuit additionally requires a detailed affidavit to substantiate the Section 2255 petition, so that Petitioner may not merely rest on "mere unsupported assertions." *Barry* **v. United States, 528 F.2d 1094, 1101 n. 31 & 32 (7th Cir. 1976),** *cert. denied,* **429 U.S. 826, 97 S.Cf. 81, 50 L.Ed. 2d 88 (1976)**.  Thus, an evidentiary hearing is not mandatory but, rather, at the discretion of the district court. *Prewitt v. United States*, **83 F.3d 812, 820 (7th Cir. 1996) (citing** *United States v. Taglia*, **922 F.2d 413, 419 (7th Cir. 1991)**.

The only issue before the Court is whether Womack received ineffective assistance of counsel when his attorney 1) failed to seek a Baston hearing on jury composition, 2) failed to challenge an allegedly illegal search and seizure, 3) failed to present evidence regarding his relevant conduct, and 4) failed to seek a jury instruction regarding single and multiple conspiracies.  After reviewing the petition

and briefs, the Court finds that a hearing on the matter is not necessary.

**B.   Analysis**

The Sixth Amendment right to counsel is more specifically stated as a right to effective counsel. **Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984)**. Therefore, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." **Id**. Basically, the alleged error(s) must be so severe "that counsel was not functioning as the 'counsel' guaranteed [Petitioner] by the Sixth Amendment." **United States v. Holman, 314 F.3d 837, 839 (7th Cir. 2002) (citing Strickland, 466 U.S. at 689)**.

Under Strickland, a party alleging ineffective assistance of counsel must prove (1) that the trial counsel's "representation fell below 'an objective standard of reasonableness.'" and (2) "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed. 2d 914 (2002) (quoting Strickland, 466 U.S. at 688, 694); see also Davis v. Lambert, 388 F.3d 1052, 1059 (2004) (citing Strickland, 466 U.S. at 688, 694)**. The Court must keep in mind, however, that its after-the-fact review of counsel's performance is "highly deferential", and thus, counsel's conduct is afforded a "wide range of reasonable professional assistance." **Bell, 535 U.S. at 702 (citing**

***Strickland*, 466 U.S. at 689)**.  In other words, Petitioner must present evidence that, under the circumstances, conduct of counsel could not reasonably be considered "sound trial strategy."  ***Id. See also United States v. Traeger*, 289 F.3d 461, 472 (7th Cir. 2002) (citing *Strickland*, 466 U.S. at 689-90)**.

1.   ***Batson* Hearing**

Womack first argues that his counsel was ineffective because he failed to request a *Batson* hearing regarding the composition of the jury.  Womack argues that his first trial consisted of a jury which contained African American jurors and that the case ended in a mistrial because the jurors could not agree, but that at the second trial the Government struck all of the African Americans from the jury pool and that his counsel failed to contest the Government's actions.  Womack argues that his counsel should have requested a *Batson* hearing to contest the Government's action in picking the jury at the second trial, but that he failed to do so.

Under the principle set out in ***Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct.1712, 90 L.Ed. 2d 69 (1986)**, prosecutors are prohibited from using their peremptory challenges to strike a potential juror on the basis of race.  ***See United States v. Stephens*, 421 F.3d 503, 509 (7th Cir. 2005)**.  A Defendant challenging the use of a prosecutors peremptory challenge to strike must first "establish a *prima facie* case of racial discrimination by showing facts and circumstances that raise an inference of discrimination."  ***Id.* at 510 (citing *Batson*, 476 U.S. at 93-94, 106 S.Ct. at 1721-22)**.  Once a defendant has established his *prima facie* case, the

Government must offer race neutral reasons for their striking the potential juror. *Batson*, **476 U.S. at 97, 106 S.Ct. at 1723**. Lastly, the defendant may "offer additional evidence to demonstrate that the proffered justification was pretextual or to otherwise establish that the peremptory strike was motivated by a discriminatory purpose." *Stephen,* **421 F.3d at 510**. Womack argues that his counsel was ineffective because he should have challenged the Government's act of striking all of the African American jurors, leaving an all white juror.

However, as both the Government and Womack's counsel John R. Abell have established, the Government did not use any peremptory challenges as to any of the African American jurors in either the first or the second trial. Attorney John R. Abell states in his affidavit that the Government did not exclude any African American jurors during voire dire and thus there was no reason to seek a *Batson* hearing or to challenge the Government's actions (Doc. 5-1 ¶ 3). Womack has offered no evidence to even suggest that a *Batson* challenge was warranted, thus Womack has not demonstrated that Abell's actions in not requesting a *Batson* hearing fell below the objective standard of reasonableness. Accordingly, Womack does not meet the first prong of the *Strickland* test on his claims of ineffective assistance of counsel for failure to have a *Batson* hearing regarding jury composition.

2. **Illegal Search and Seizure**

Womack next challenges the adequacy of his trial counsel's representation for failing to contest the validity of statements made by Womack at

the time of his arrest and the search of Womack's bedroom during his arrest which resulted in the discovery of a gun and a considerable amount of cash.

However, Abell stated in his affidavit that he did not file a motion to suppress because the evidence was properly obtained incident to an arrest. A search conducted without a warrant is unreasonable unless it falls within one of the exceptions to the rule. One such exception is a search conducted by a law enforcement officer incident to an arrest. During a search incident to arrest, first recognized in ***Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)**, an arresting officer may conduct a search of the person's body as well as the area in his immediate control in order to locate weapons which might be used "in order to resist arrest or effect his escape." **395 U.S. at 763, 89 S.Ct. at 2040**. The warrant requirement is excused "only when the search 'is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.'" ***New York v. Belton*, 453 U.S. 454, 465, 101 S.Ct. 2860, 69 L.Ed. 2d 768 (1981)**. Officers are also allowed to conduct a protective sweep, another exception, which allows officers to, as a precautionary matter and without probable cause, "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." ***Peals v. Terra Haute Police Dept*., 535 F.3d 621, 627 (7th Cir. 2008) (quoting *Maryland v. Blue*, 494 U.S. 325, 311, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990))**. The rationale behind allowing protective sweeps is to protect "the safety of police officers, who have an

interest in ensuring their safety when they lawfully enter a house.  That interest justifies their ensuring that the dwelling does not harbor another person who is dangerous and who unexpectedly could launch an attack." ***Leaf v. Shelnutt*, 400 F.3d 1070, 1087 (7th Cir. 2005)**.

In this case, Agent Gillespie testified at trial that he went into the bedroom occupied by Womack and searched the premises incident to the arrest of Womack.  During his search, the Agent found a gun on the top shelf of a closet as well as $16,830 in cash in a nightstand.  Clearly, given the location of the items found during the search and the testimony regarding the extent of the search by Agent Gillespie, the search of Womack's house was a lawful search incident to arrest.  Further, as to the statements Womack made to police about the location of the gun in his bedroom, as the Government correctly points out, that testimony was never brought out at trial.

Even if Womack's counsel's performance was deficient for failing to file a motion to suppress Womack's statements and the presence of the gun and large sum of money in his bedroom, Womack still fails to meet the prejudice prong of the *Strickland* test.  The second prong requires Womack to show that the outcome would have been different but for his counsel's ineffective assistance.  However, in this case, the evidence against Womack regarding his involvement in the conspiracy was overwhelming.  Numerous witnesses testified to Womack's involvement in the conspiracy.  Specifically, Joe Sharp, who pled guilty to conspiring with Womack, testified that he delivered cocaine to Womack on numerous occasions.  He discussed

how the drugs were packaged and how much Womack paid him for each delivery. Sharp further testified to numerous telephone calls between Womack and Roosevelt Turner, another player in the conspiracy, regarding the packaging and delivery of drugs. Anthony Watts, another co-defendant, testified that he purchased cocaine from Womack on numerous occasions and that he attempted to purchase more drugs from Womack in 2004 but that Womack could not get in touch with Turner in order to obtain the drugs.

    Several other witnesses testified to purchasing cocaine from Womack, as well as testified to his involvement with Turner. Another witness, Brian Greer testified that in November or December of 2003 he purchased cocaine from Womack and then again purchased nine ounces in January or February 2004. Andre Denton also testified that he was present at Womack's house when he sold cocaine to two individuals. Denton also testified that Womack had told him that Turner was his source for the cocaine he sold. Anthony Stokes testified that he tried to buy cocaine from Womack but that the price Womack quoted for the drugs was too high. He also testified that he attended a local bar with Womack and that Womack stated people at the bar were "eating his cocaine". Two witnesses, Corey Neal and Bacardi Holmes, testified to working for Womack and being paid in cocaine. Neal also testified that he saw Womack sell cocaine to individuals on several occasions and that Sharp would often show up at Womack's house with sacks.

    Even if the evidence regarding the gun and money had been excluded, the evidence of his involvement in the conspiracy was overwhelming. Numerous co-

defendants testified as to Womack's involvement in the conspiracy. Many witnesses testified that they purchased cocaine from Womack on numerous occasions and that Womack obtained the cocaine from Turner. The witness testimony was further corroborated by 35 telephone conversations between Womack, Sharp and Turner which established that Womack was involved in distributing controlled substances and that he was in a conspiratorial relationship to distribute cocaine. Thus Womack has not shown that there is a reasonable probability that the result would have been different had the evidence regarding the discovery of the gun and money during his arrest been suppressed. Thus, Abell was not ineffective.

### 3. Evidence Regarding Amount of Cocaine

Womack also argues that his trial counsel was ineffective because he failed to present evidence relating to the amount of cocaine. Specifically, Womack argues that his counsel failed to cross examine witnesses as to whether the cocaine he allegedly sold was more or less than 5 kilograms. However, as the Government points out, the decision on whether or not to cross-examine witnesses concerning the amount of cocaine was a strategic decision on Womack's attorney's part and *Strickland* allows counsel to make strategic decisions regarding how to proceed at trial. **See *Moore v. Caperson*, 345 F.3d 474, 490 (7th Cir. 2003); *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66 (counsel has wide latitude in strategic decisions and there is a strong presumption that conduct was reasonable); *Brown v. Sternes*, 304 F.3d 677, 691 (7th Cir. 2002) (court normally defers to**

**attorney's decision if he can articulate a strategic reason behind his action**).

Here Womack's attorney has articulated a strategic reason behind his decision not to cross-examine witnesses as to the amounts of cocaine at issue. Womack's attorney, John R. Abell, stated that his strategy throughout the case was proving his client's innocence and that drawing "attention to the amount of drugs involved could have compromised the defendant's position that he was not involved in a drug conspiracy" (Doc. 5, Ex. 1). It was a strategic decision on Abell's part to cross-examine witnesses in such a way as to be consistent with Womack's position that he was not involved in the conspiracy, and choosing not to cross-examine witnesses as to drug amounts that Womack allegedly distributed fit within that strategy. Therefore, Abell's decisions regarding how to cross-examine witnesses was a strategic decision on Abell's part and reasonable in light of his strategy at trial.

### 4.  Multiple Conspiracy Instruction

Finally, Womack argues that his counsel was ineffective because his attorney failed to argue or request an instruction on multiple conspiracies. Womack argues here that the evidence showed multiple conspiracies and not a single conspiracy as the Government put forth, but that his attorney failed to examine witnesses or request an instruction on multiple conspiracies.

As to the examination of witnesses regarding conspiracies, as already stated, Abell's strategy focused on Womack's innocence and lack of involvement in any conspiracy, not his involvement in only a few of several conspiracies. Abell's decision not to question witnesses about Womack's involvement in multiple

conspiracies instead of a single conspiracy was a strategic decision on Abell's part.

As to Womack's argument that his counsel failed to request an instruction on multiple conspiracies, Womack's attorney stated that he did not seek an instruction on multiple conspiracies as the evidence supported a single conspiracy instead of multiple conspiracies.  In order to sustain a conviction on conspiracy, the Government had to prove that (1) a conspiracy existed and (2) Womack knowingly become a member of the conspiracy with the intention to further the conspiracy. **See Seventh Circuit Pattern Jury Instruction 5.08**.  A defendant is entitled to a certain instruction on his theory of the case if the evidence supports that theory. **United States v. Millet, 510 F.3d 668, 675 (7th Cir. 2007)**.  Here, however, the evidence did not support multiple conspiracies, but instead pointed to a single conspiracy.  Joe Sharp testified that he delivered cocaine from Turner to Womack on several occasions from May 2004 and January 2005.  Also at Turner's direction, Sharp testified that he retrieved cocaine from Womack and transported the cocaine to Kareem Hamilton.  Audio recordings at trial supported Sharp's version of the events.  All of the evidence clearly pointed to a single conspiracy.  Accordingly, Womack's attorney was not ineffective in failing to offer an instruction on multiple conspiracies when the evidence did not support such an instruction.  Further, even if Abell was ineffective in failing to argue for the instruction, Womack has failed to show that he was prejudiced by the failure.  As stated earlier, the evidence against Womack was overwhelming.  Therefore, Womack has failed to demonstrate that his attorney's decision not to seek an instruction on multiple conspiracies was anything

other than a strategic decision on his part.  Accordingly, the Court denies his petition as to his claim of ineffective assistance of counsel.

### III.  Conclusion

Accordingly, Womack has not satisfied either of the prongs under *Strickland* and thus has not met his burden for proving ineffective assistance of counsel.  Thus, the Court **DENIES** his petition for habeas relief pursuant to § 2255.  The Court **DISMISSES with prejudice** his § 2255 petition.  The Clerk to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 20th day of May, 2010.

/s/    David R Herndon

**Chief Judge**
**United States District Court**